Per Curiam.
Newton died intestate; the defendants obtained letters of administration of his estate, and gave bond with Delaney and one Davis, deceased, his sureties. Delaney charges a misapplication and waste of assets by his principals, the insolvency of one and the danger of insolvency of the other. He filed his bill against them before the expiration of two years from the date of the bond, that is to say, on the 23d day of March, 1813. The administrators have returned an inventory and an account of sales, which together with debts due at the time of the intestate’s decease, amount to $2700 or thereabouts; part of the moneys due by the sale have been collected by the administrator, and part of the debts due to the deceased. And there yet remains not paid away to creditors a considerable * sum. The defendants at the time of filing the bill were in the circumstances stated in it; that is to say, the feme defendant insolvent, and the other defendant embarrassed in his circumstances, but in the possession of property of more value than the above-mentioned sums. But it does not appear whether he has as much property as is equal both to his debts and the assets to be accounted for as administrator. An injunction issued when this bill was filed to stay the assets in the hands of divers persons, and to hinder the same from coming to the hands of the administrator, which has been continued to this time. It does not appear that there are any creditors of the intestate yet unsatisfied ; that is to say, it does not appear whether there are or not. The intestate left eight children, all under the age of 21. Two of them only have guardians. The question submitted to the consideration of the court is, can the administrator be ordered to give security to the complainant, or otherwise, that a receiver be appointed to take *13 possession of the assets, and to have power to use the name of the administrator, in suits to be brought by him, for the recovery of moneys not yet collected. Let us consider, first, what is the equity of a creditor or legatee against an executor ? Secondly, what it is against an administrator ? Thirdly, what is the equity of a surety against his principal in ordinary cases ? Fourthly, what it is in the case of an administration bond ?
The executor is appointed by the testator; until lately he was not bound by law to give security: but he held the assets for creditors and legatees. If poor and insolvent, and he has raised a just suspicion, by his conduct, that he will waste or withdraw the assets, a receiver may be appointed. 2 Atk. 126, 213. Their fund must be secured for them. The administrator is bound to ' give security. The law provides it. If letters are granted without, creditors and legatees could have the same remedy as against an executor. If given, but insufficient, the law would * look upon it as not given at all, so far as the insufficiency went. And for the benefit of creditors and legatees, the court would order it to be given again. But a surety is not allowed to stand in the place of creditors or legatees till he has paid them all that is due to them. 10 Ves. 410. The surety cannot act upon the principal in such a case as the present through the medium of the creditors and legatees. What then is his own equity against his principal ? The surety makes himself safe, either by a bond or covenant of indemnity, or the law raises a promise of indemnity on the part of the principal in his favor. If there be a covenant or bond for indemnity, equity will enforce it; but not add to it or alter it. Equity will not give damages before the law gives damages, and these arise only upon a breach, by non-payment on the part of the. principal when the debt becomes'payable. 1 Fonb. 38. So also in the case of an implied promise, it is not broken till a default in non-payment on the part of the principal. The court cannot make for them a third. contract, independent of those already mentioned, namely, that the principal shall give counter security to the surety when required. For he shall not be subjected to that for which he did not -stipulate, nor the surety be entitled to that which he did not originally require. Whoever wishes to see the cases upon the application of sureties against their principals, may see them in 6 Ves. junior, 734; 1 P. W. 683; 1 Atk. 185; Amb. 161; 2 Ves. junior, *14 640, 544; 4 Ves. junior, 833; 2 Bro. Ch. C. 578; 3 Ves. junior, 573; 10 Ves. junior, 410; 1 Vernon, 189; Gil. Rep. 69, 1 Ch. Ca. 223, 300; Francis’ Maxims, 8. We shall there see that a surety may compel payment when the money becomes payable; that a surety who becomes by accident not liable at law, shall not be made so in equity. That delay of the obligee will hot discharge him unless required to proceed, or where time is given by him to the principal after suit or judgment. That the surety cannot demand that the * bond be assigned to him, until payment made by him. The sureties as between one another, shall be liable on a joint bond where one dies, and that he who is subjected by a bill in equity is entitled at the same time to a decree over against the principal. Further the court has not yet gone. And at the time of filing this bill, the time to account for the estate" by the principal had not yet arrived. If such be the couz’se of equity in common cases, will it go further in favor of a surety for an administrator? An injunction, as we now’think, after much consideration, to stop the assets in the hands of strangers, ought not to issue. What if they waste the assets ? Or become insolvent and should never account for them ? What if creditors sue the administrator and get an execution to be levied de bonis propriis ? What if the distz’ibutees sue and get judgment ? Must all be kept off till the suit in equity be determined ? Who shall pay the losses sizstained by these means ? Can the surety require new security, not asked for originally, and before the time to settle the estate ? No moz’e, we conceive, than in other ordinary cases. And when the time has arrived for settling the estate, is this surety placed izz a better situation than in ordinary cases ? By no means. He may call upon the obligees to sue, and be discharged if they will not, or give time to the principal. He may sue the principal, ascertain the amount due from him, and compel him to pay to legatees or distz'ibutees, making them parties to the bill. But he cannot, as the court conceives, call upon him for counter security, unless it were originally contracted for. The court can as easily take the assets out of his hands after the two yeaz’s have expired, and put them into the hands of the distributees as into the hands of a receiver, who, thoughJbe gives security, must be allowed for his services, and may become by possibility, through failure of himself and his securities, unable to pay. Thei’e is no need of a receiver in such a case, unless the Couzzty *15 Court refuse to appoint guardians to the distributees * who [18] are minors, in which case, and in which only, would a receiver be appointed. Here no application has been made to the County Court for that purpose, nor are the distributees made parties to this bill. What if the rule contended for by the complainant be adopted ? Shall the court compel sheriffs, constables, clerks, coroners, county trustees, treasurer, secretary, &c., all to give counter security ? Or to be placed in the hands of sureties or receivers, or to be suspended ? Are not guardians provided for by a special act, and administrators also by a like act, and does not this prove that the law was not so before ? Decree accordingly.
See Wade v. Green, 3 Hum. 547; Williams v. Tipton, 5 Hum. 66; Floyds v. Goodwin, 8 Yer. 494; King’s Digest, 6561, 10,149, 10,150.